Stephen C. Thompson, OR Bar No. 763597
scthompsonbend@gmail.com
Stephen C. Thompson, LLC
19088 Dusty Loop
Bend, OR 97703
(503) 702-1899
*Local Counsel*

Brewster S. Rawls, VA Bar No. 23604
brawls@rawlslawgroup.com
Glen H. Sturtevant Jr., VA Bar No. 73458
gsturtevant@rawlslawgroup.com
Rawls Law Group, P.C.
211 Rocketts Way, Suite 100
Richmond, VA 23231-3069
(804) 344-0038
Attorneys for Plaintiff
*Pro Hac Vice Pending*

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| MICHELE J. HALE, Individually and as Personal Representative of the Estate of KIM V. HALE, Deceased,<br><br>        Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | Case No.:<br><br>**COMPLAINT**<br><br>**Federal Tort Claims Act:**<br>28 U.S.C. §§ 1346(b), 2671 *et seq.* |

COMPLAINT                   1

Michele J. Hale, Individually and as Personal Representative of the Estate of Kim V. Hale, Deceased, states as follows for her Complaint against Defendant United States of America:

**JURISDICTION AND VENUE**

1. Michele J. Hale is the proper Personal Representative of the Estate of Kim V. Hale, Deceased, and the proper party to bring all claims against Defendant in this action.

2. Regarding Defendant United States of America, this action arises under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq*. This Court is vested with jurisdiction to adjudicate this dispute pursuant to 28 U.S.C. § 1346(b).

3. Prior to the institution of this action against Defendant United States, Plaintiff filed an administrative tort claim on August 29, 2019 with the Department of Veterans Affairs as required by 28 U.S.C. § 2675(a), attached as **Exhibit A**.

4. The Department of Veterans Affairs acknowledged receipt of the administrative tort claim on September 3, 2019.

5. The six-month period set forth in 28 U.S.C. § 2675(a) has expired.

6. Accordingly, Plaintiff's claims against Defendant United States are ripe to be litigated in this Court pursuant to 28 U.S.C. § 2675(a).

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1402(b) as the cause of action as to Defendant United States arose within the District of Oregon at the Roseburg Veterans Affairs Medical Center ("Roseburg VAMC") at 913 NW Garden Valley Boulevard, Roseburg, OR 97471.

8. Qualified licensed professionals, specifically, Dr. Parameswaran Hari, a licensed physician board-certified in Oncology and Internal Medicine and Chief of the Division of

Hematology Oncology at the Medical College of Wisconsin, and Dr. Jack Goldberg, a licensed physician board-certified in Internal Medicine, Hematology, and Medical Oncology, have supplied signed reports to Mrs. Hale's counsel stating that the care, skill, and knowledge exercised and exhibited by Defendant's agents, servants, employees, and personnel in the care and treatment of Mr. Hale that is the subject of this Complaint deviated from the acceptable professional standard of care and caused the harm and damages alleged.

9. Dr. Hari's expert report is attached as **Exhibit B**. Dr. Goldberg's expert report is attached as **Exhibit C**.

## PARTIES

10. At all times relevant to this action, Defendant United States owned, occupied, and operated the Roseburg VAMC through the Department of Veterans Affairs and related agencies and departments.

11. At all times relevant to this action, the agents, servants, employees, and personnel of Defendant United States were acting within the course and scope of their employment.

12. At all times relevant to this action, in the period spanning May 2015 to November 2018, Kim Hale received care and treatment at the Roseburg VAMC.

## FACTUAL ALLEGATIONS

13. At all times in the relevant period, Mr. Hale's laboratory tests showed abnormalities. His complete blood counts ("CBCs") showed abnormally low red blood cells, hemoglobin, and hematocrit. Mr. Hale's other laboratory tests also showed abnormalities, including elevated total protein.

14. Mr. Hale had a normal total protein level and normal CBC on March 10, 2015. As early as May 7, 2015, total protein had increased to 8.6. Thereafter, lab values in 2016 and 2017 showed a consistent increase in total protein level and subsequent lowering of albumin level, indicating the elevated protein level was driven by an increase in globulin level.

15. As of March 31, 2017, total protein was 10.6 and increased further to 11.6 by December 2017.

16. During this time, on May 31, 2017, Mr. Hale presented to the Roseburg ED with complaints of a cold lasting 7-10 days and was diagnosed with an upper respiratory infection.

17. One week later, on June 7, 2017, Mr. Hale presented to the Roseburg VAMC Gastroenterology Clinic ("GI Clinic"). He was evaluated by Dr. Lisa Brandenburger ("Dr. Brandenburger"), who noted Mr. Hale had mild anemia based on recent lab tests and was complaining of unusual fatigue and sleeping more than usual. Dr. Brandenburger further noted Mr. Hale's protein counts were high on his last blood draw and his last CBCs indicated anemia and suggested that a work-up be done.

18. It should also be noted that the April 2017 CBC results further showed RBC rouleaux formation, a hallmark of myeloma. This constellation of findings should have prompted a search for myeloma or at the very least a serum protein electrophoresis work up by Mr. Hale's PCP to determine the cause of the elevated protein; however, this was not done.

19. On July 12, 2017, Dr. Brandenburger spoke with Mr. Hale by telephone. In the notes from this visit, Dr. Brandenburger indicated Mr. Hale's PCP was to check his CBCs while Mr. Hale was taking Imuran (azathioprine), a drug prescribed for his Crohn's disease. At the time, Mr. Hale's PCP was David J. Lampert, NP ("Mr. Lampert").

20. Mr. Hale was next seen in the GI clinic by Dr. Brandenburger on August 23, 2017. As of that day, Mr. Hale's PCP had not ordered CBCs or other lab tests. As a result, Dr. Brandenburger ordered labs for that same day. Mr. Hale was having difficulty sleeping due to pain and continued to have anemia.

21. On October 17, 2017, Mr. Hale was seen in the Roseburg VAMC Primary Care Clinic ("PCC") by Mr. Lampert. Mr. Lampert did not note Mr. Hale's low blood counts or continued fatigue. Mr. Lampert further did not follow up on Mr. Hale's symptoms or abnormal lab results, or mention Dr. Brandenburger's request for follow up.

22. Mr. Hale was next seen in the PCC by Mr. Lampert on December 29, 2017. During this visit, Mr. Hale complained of back pain and abdominal discomfort, which had caused him to begin sleeping in a recliner and frequently use a heating pad. Mr. Hale also reported he had unintentionally lost 20 pounds in the previous month. A physical exam also noted that he had RUQ and spine tenderness. At this point, a cancer diagnosis should have been at the top of the differential diagnosis of any reasonable medical provider. However, in response to these symptoms, Mr. Lampert told Mr. Hale he should try stretching for his back pain. He further noted Mr. Hale may need a CT scan of his pelvis and/or abdomen but did not order one. Mr. Lampert did note the presence of mild anemia and an elevated total protein based on Mr. Hale's most recent lab results. It appears more tests were ordered, but there is no data regarding what this additional work up was to be.

23. On January 24, 2018, Mr. Hale presented to the ED with complaints of right-sided abdominal pain and weight loss. He was noted to have pain while going over "bumps" in the road, RUQ tenderness and bulge. He was evaluated by Dr. Aaron M. Hougham ("Dr. Hougham"), who

incorrectly noted Mr. Hale's CBCs were "unremarkable." A CT scan of the abdomen/pelvis was performed and showed no significant abnormalities. Dr. Hougham prescribed lidocaine patches for Mr. Hale's complaints of pain.

24. On the same day, January 24, 2018, Mr. Lampert wrote a letter to Mr. Hale in which he noted Mr. Hale had an elevation in total protein with an unidentified cause. He also indicated to Mr. Hale he had contacted the hematology care team at the Portland Veterans Affairs Medical Center ("PVA Hematology") to review Mr. Hale's information.

25. On January 30, 2018, Mr. Hale communicated to PVA Hematology that he could not travel to Portland because his Crohn's Disease caused bathroom issues that were very difficult to manage while traveling. As a result, Mr. Lampert ordered a community care hematology consult for Mr. Hale on February 2, 2018, so that he could receive care locally.

26. On February 5, 2018, Mr. Hale's request for community care was denied. Mr. Lampert, however, performed no further follow up at that time.

27. Mr. Hale was next seen by Mr. Lampert on February 20, 2018. Mr. Hale again complained of abdominal and back pain during this visit. Mr. Lampert also noted Mr. Hale had an elevation in total protein. Again, Mr. Lampert performed no follow up regarding a hematology consult for Mr. Hale.

28. The next day, on February 21, 2018, an electronic communication from Dawn E. Bracken was noted in the chart, stating "Board has recommended e-consult for review and further recommendations. Per consult, please 'evaluate rising serum total protein and now abnormal SPEP' and give further recommendations."

29.     On February 28, 2018, Dr. Brandenburger evaluated Mr. Hale again in the GI Clinic. Mr. Hale complained of extreme fatigue and abdominal pain on his right side. Dr. Brandenburger ordered a consult with surgery to evaluate for a potential hernia, which she suspected could have been the cause of Mr. Hale's abdominal pain.

30.     The same day, Dr. Michael Henrich entered an electronic communication in Mr. Hale's chart, stating "please schedule for new patient visit[.] [P]lease obtain serum light chains and Roseburg and skeletal bone survey."

31.     Nearly two months passed without any follow up on Dr. Henrich's communication. On April 18, 2018, Desiree N. Tyson responded, stating "As stated in previous consult request, patient is unable to travel to Portland due to his Crohns disease. He experiences 'explosive diarrhea' at unpredictable times so is unable to take DAV and does not have a car either. Can community care consult be placed for him to receive this care locally?"

32.     From April 18-20, 2018, multiple providers noted Mr. Hale was unable to travel to PVA Hematology and recommended community care be approved due to Mr. Hale's extreme need for local treatment. One communication by Cassandra Kjelsrud on April 20, 2018 states: "Patient unable to travel to Portland[.] A community care consult should be placed explaining this patient's extreme medical need for local care."

33.     On June 21, 2018, Mr. Hale was seen by Mr. Lampert in the PCC. He complained of increased back pain, which had been present for six months at that point. Mr. Lampert noted elevated total protein and an abnormal serum protein electrophoresis ("SPEP") test, a measure of specific proteins in the blood. Mr. Lampert again requested a community care hematology consult.

34. The following day, on June 22, 2018, Mr. Hale was seen by Dr. Murr in the Surgery Clinic. At that time, Mr. Hale's right-sided abdominal pain had cleared up while his back pain continued to worsen. Dr. Murr ruled out a hernia as the cause of Mr. Hale's former abdominal pain.

35. On the same day, June 22, 2018, Mr. Lampert wrote to Mr. Hale to inform him of abnormal lab tests, and for the first time noted a concern for multiple myeloma.

36. On June 26, 2018, Mr. Hale had a bone scan ordered by Mr. Lampert and interpreted by Dr. James Lee Manwill ("Dr. Manwill"). Dr. Manwill noted rising serum total protein and an abnormal SPEP. He also noted a mild compression deformity. Dr. Manwill did not perform any immediate follow-up to these findings, nor did Mr. Lampert.

37. On June 27, 2018, Mr. Lampert again requested a community care hematology consult. The request was finally approved on the following day. As of July 20, 2018, however, Mr. Hale's consult had still not been scheduled and a provider requested his appointment be expedited.

38. On July 29, 2018, Mr. Hale presented to the ED again with complaints of severe back pain that felt unbearable at rest. The examining physician, Dr. William A. Miller ("Dr. Miller") ordered x-rays of the thoracic spine and an MRI. The x-rays revealed compression fractures at two vertebrae and the MRI revealed multiple metastatic lesions in Mr. Hale's spine. Dr. Miller informed Mr. Hale and his wife that Mr. Hale had a malignancy, possibly multiple myeloma. He also noted that Mr. Hale's hematology/oncology consult had been approved for local referral but was still not scheduled.

39. Even after a long period of reporting diffuse pain in the back and over the ribs (RUQ) and having anemia and elevated total protein for more than a year, Mr. Hale's diagnosis

was delayed until August 2018 and definitive care was not instituted until Mr. Hale was referred to Steelhead Oncology, a local private clinic.

40. On August 7, 2018, Mr. Hale was seen by Dr. Joshua Weese ("Dr. Weese") for an initial consultation at Steelhead Oncology. Dr. Weese performed a bone biopsy and confirmed Mr. Hale's diagnosis of multiple myeloma. He also ordered steroids and pain medication for Mr. Hale's severe back pain and prescribed him Xgeva (denosumab), a drug used to treat bone cancer and bone problems in patients with cancer.

41. Mr. Hale was next seen by Dr. Weese on August 9, 2018. Dr. Weese noted Mr. Hale's labs from earlier in the week showed a dramatic progression of his disease. Dr. Weese decided not to wait for the results of a bone marrow before initiating Mr. Hale's therapy, instead prescribing a chemotherapy drug, Velcade (bortezomib), and dexamethasone that same day. Dr. Weese eventually added another chemotherapy drug, Revlimid (lenalidomide), to Mr. Hale's therapy.

42. Mr. Hale received appropriate therapy from Dr. Weese and rapidly entered a remission with M protein decline from 6.8 to 0.7 in two cycles. Unfortunately, he had already suffered significant damage to his bones and overall health leading to restricted mobility, risk of pneumonia, and general decline.

43. Despite Dr. Weese's treatment, Mr. Hale's condition worsened. He never recovered from the weight loss and sarcopenia that preceded his diagnosis. Indeed, Dr. Weese noted that Mr. Hale's pre-treatment status was so poor that his symptoms of fatigue, weakness, and pain were persistent. He was hospitalized several times at the Roseburg VAMC and Mercy Medical Center.

He suffered significant pain, syncopal episodes, and falls. Mr. Hale was ultimately sent home with hospice services and died of malignant multiple myeloma on November 26, 2018.

## CLAIMS

### Count I – Negligence

44. Plaintiff restates and realleges paragraphs 1 through 43 as if fully stated herein.

45. As a provider of medical services to Mr. Hale, the United States and its agents, servants, and employees at the Roseburg VAMC owed Mr. Hale a duty of reasonable care.

46. The agents, servants, and employees of the United States at the Roseburg VAMC and its affiliated clinics, including but not limited to Mr. Lampert, while acting within the scope of their employment, breached their duty of reasonable care in the following respects:

    A. Negligent failure to appreciate and appropriately investigate and work up laboratory test results and Mr. Hale's constellation of symptoms;

    B. Negligent failure to timely refer and arrange for Mr. Hale to receive a consultation with a hematology/oncology specialist;

    C. Negligent delay in diagnosing and treating multiple myeloma;

    D. Other deviations from the standard of care which will be developed through further investigation, discovery, and expert review.

47. Mr. Hale's myeloma could have been diagnosed as early as March 2017, at which time he had elevated total protein for about two years and should have been diagnosed no later than December 2017 or January 2018, when he complained of pain, debility, and unintentional weight loss. Indeed, combined with the extended period of total protein elevation, any reasonable medical provider should have had a very high suspicion of cancer.

48. By the time the myeloma was diagnosed, Mr. Hale had suffered major bone damage and ultimately irreversible decline in function caused by unabated myeloma. Nonetheless, Mr. Hale did have a dramatic and rapid response to treatment. Had he been diagnosed and appropriate treatment started earlier, Mr. Hale would still be alive today.

49. Mr. Lampert simply made no reasonable or timely effort to follow up on Mr. Hale's symptoms or concerning blood test results.

50. At all relevant times during his care and treatment at Roseburg VAMC, Mr. Hale was seen by providers who were capable of investigating his symptoms and diagnosing him with myeloma or referring him to a specialist who could diagnose him with myeloma.

51. As a direct and proximate result of the negligence of the agents, servants, and employees of Defendant, Mr. Hale suffered premature death from malignant multiple myeloma, and significant pain and suffering in the months before and after his diagnosis leading up to his death.

52. Under the laws of the State of Oregon, a private person or persons would be liable to Plaintiff for the foregoing negligent acts and omissions.

### Count II - Loss of Consortium

53. Plaintiff restates and realleges paragraphs 1 through 52 as if fully stated herein.

54. On November 26, 2018, Kim Hale died from malignant multiple myeloma, giving rise to a negligence claim against Defendant United States.

55. At the time, Decedent was married to Plaintiff Michele J. Hale, who is now a widow as a result of Mr. Hale's wrongful death.

56. As a direct and proximate result of the negligence of the agents, servants, and employees of Defendant, Mrs. Hale has sustained pecuniary loss and the loss of society, companionship, and services of her husband.

57. Under the laws of the State of Oregon, a private person or persons would be liable to Plaintiff for the foregoing negligent acts and omissions.

## DAMAGES

58. Plaintiff restates and realleges paragraphs 1 through 57 as if fully stated herein.

59. Accordingly, Plaintiff Michele J. Hale, Individually and as Personal Representative of the Estate of Kim V. Hale, claims the following damages from Defendant United States:

    A. Economic damages, including:

        i. Reasonable and necessary charges incurred for doctors' services, hospital services, nursing services, rehabilitative services, other healthcare services, burial services, and memorial services rendered for Mr. Hale;

        ii. Just, fair, and reasonable compensation for (a) loss of income sustained by Mr. Hale in the period between his injury and death; (b) pecuniary loss to Mr. Hale's estate, including future lost income and reasonable future expenditures; (c) pecuniary loss of Mrs. Hale, as the spouse of Mr. Hale; and (d) loss of services sustained by Mrs. Hale, as the spouse of Mr. Hale;

    B. Non-economic damages, including,

      i.  Just, fair, and reasonable compensation for (a) disability, pain, and suffering sustained by Mr. Hale in the period between his injury and death; and (b) loss of society and companionship sustained by Mrs. Hale, as the spouse of Mr. Hale.

WHEREFORE, Plaintiff requests that the Court grant judgment in her favor against Defendant in the amount of $6,000,000 together with any other costs she may be lawfully entitled to recover.

DATED: <u>July 20, 2021</u>        Respectfully submitted,

                MICHELE J. HALE, Individually and as Personal Representative of the Estate of KIM V. HALE, Deceased

            By: /s/Stephen Thompson
                Stephen C. Thompson, OR Bar No. 763597
                Stephen C. Thompson, LLC
                19088 Dusty Loop
                Bend, OR 97703
                (503) 702-1899
                scthompsonbend@gmail.com
                *Local Counsel*

                Brewster S. Rawls, VA Bar No. 23604
                Glen H. Sturtevant Jr., VA Bar No. 73458

                Rawls Law Group, P.C.
                211 Rocketts Way, Suite 100
                Richmond, VA 23231-3069
                (804) 344-0038
                brawls@rawlslawgroup.com
                gsturtevant@rawlslawgroup.com
                Attorneys for Plaintiff
                ***Pro Hac Vice Pending***